**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

FRANCES ELIZABETH BUTTERS,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. 12-CV-2071-LRR

**RULING ON JUDICIAL REVIEW**

_____

**TABLE OF CONTENTS**

I.     **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **PRINCIPLES OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   **FACTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

      *A.*    *Butters's Education and Employment Background.* . . . . . . . . . . . . **5**
      *B.*    *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . . . . . . . **5**
           *1.*    *Butters's testimony.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
           *2.*    *Vocational expert testimony.* . . . . . . . . . . . . . . . . . . . . . **7**
      *C.*    *Butters's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
           *1.*    *Congestive heart failure.* . . . . . . . . . . . . . . . . . . . . . . . . **7**
           *2.*    *Kidney stones.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
           *3.*    *Depression and anxiety.* . . . . . . . . . . . . . . . . . . . . . . . . **9**
           *4.*    *Physicians' opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

V.    **CONCLUSIONS OF LAW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

      *A.*    *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . . . . **12**
      *B.*    *Claimant's Objections.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
           *1.*    *Drs. Kabel and Kettman's opinions.* . . . . . . . . . . . . . . . . **14**
           *2.*    *Impairment listing determination.* . . . . . . . . . . . . . . . . . . **18**
           *3.*    *RFC determination.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

VI.   *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

VII.  *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

## *I. INTRODUCTION*

The matter before the court is Plaintiff Frances Elizabeth Butters's Complaint (docket no. 3) for judicial review of the Social Security Commissioner's ("Commissioner") decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Butters asks the court to reverse the decision of the Commissioner and order the Commissioner to provide her SSI benefits. Butters requests that the court remand this matter solely for the purpose of calculating and paying benefits.

## *II. PROCEDURAL BACKGROUND*

On June 24, 2009, Butters applied for SSI benefits. In her application, Butters alleged an inability to work since May 20, 2009, due to dilated cardiomyopathy and obesity.[1] In the Disability Report (Form SSA-3368), Butters also claimed she suffers from congestive heart failure, depression, anxiety and kidney problems. Record at 190. Butters's application was initially denied on August 25, 2009. *Id*. at 77. On January 19, 2010, her application was denied on reconsideration. *Id*. at 78. Butters filed a written request for an administrative hearing before an Administrative Law Judge ("ALJ") on January 26, 2010. *Id*. at 105. On June 2, 2011, Butters appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. *Id*. at 34-56. Butters and vocational expert Maryanne Jacobs testified at the hearing. *Id*. On August 19, 2011, the ALJ denied Butters's claim. *Id*. at 14-26. The ALJ determined that

---

[1] On October 3, 2006, Butters applied for disability insurance benefits and SSI benefits. She alleged an inability to work since August 28, 2003, due to obesity and heart problems. These claims were initially denied on December 13, 2006. In a decision dated May 19, 2009, Administrative Law Judge Denzel R. Busick determined that Butters was not eligible for benefits. Butters did not appeal this decision; therefore, it is not an issue in this case.

Butters had not suffered from a disability since June 24, 2009, and was not entitled to SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. *Id*. Butters appealed the ALJ's decision. *Id*. at 12. On September 1, 2012, the Appeals Council denied Butters's request for review. *Id*. at 1-3. Consequently, the ALJ's August 19, 2011, decision was adopted as the Commissioner's final decision.

On October 9, 2012, Butters filed the Complaint. The Commissioner filed an Answer on December 14, 2012. Answer (docket no. 6). On January 11, 2013, Butters filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. Brief in Support of Complaint (docket no. 10). On March 12, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the court to affirm the ALJ's decision. Brief Resisting Complaint (docket no. 11). On March 19, 2013, Butters filed a reply brief. Reply Brief (docket no. 12).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the court with the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Substantial evidence is defined as "'less than a preponderance but . . . enough that

a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2012) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court "consider[s] the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (A court's review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must] also consider evidence in the record that fairly detracts from that decision."). The Eighth Circuit explained, "This standard is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991) (internal quotation marks omitted)). Furthermore, a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (internal quotation marks omitted)). "An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If

substantial evidence supports the ALJ's decision, [the court] will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the court] would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.'" (quoting *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005))).

## IV. FACTS

### A. Butters's Educational and Employment Background

Butters was born in 1969. Record at 77. She graduated from high school and has completed one year of college. *Id*. at 199. In the past, Butters worked as an assistant manager at a retail store and as a head cook. *Id*. at 271. However, a detailed earnings report indicates that Butters has not worked since 2003. *Id*. at 183. Her total earnings between 1995 and 2003 ranged from $3,382.39 in 1995 to $14,720.95 in 1999, and fell to $8,930.46 by 2003. *See id*.

### B. Administrative Hearing Testimony

#### 1. Butters's testimony

At the administrative hearing, Butters's attorney inquired about Butters's work history. As a head cook, Butters "had to be on [her] feet all day, running back and forth." *Id*. at 38-39. She testified that she had to lift up to fifty pounds in both of her past jobs. *Id*. at 39.

Butters's attorney also asked Butters to discuss her difficulties with her physical health problems:

Q: How much do you think that you could lift at one time if you just had to do it once?

A: If I had to do it once? Well, lately I—the only thing I lift is, you know, potato chips that get in the bag. I lift that. My daughter knows I—she knows my limits.

| | |
|---|---|
| Q: | Okay. |
| A: | And she doesn't let me turn around and basically not even try to lift anything— |
| Q: | Okay. |
| A: | —heavier than five pounds. |
| Q: | All right.  Are you supposed to have your feet up? |
| A: | Yes.  I have to have my—when I'm sitting down, my feet has to be up [at] all times. |
| Q: | Okay.  Is this what your doctor tells you? |
| A: | Yes. |
| Q: | Do you have swelling in your feet? |
| A: | Yes.  Excuse me. |
| Q: | In your legs? |
| A: | Swelling in the legs.  My feet.  I have also pains that run from my feet up to my groin area. |
| Q: | And do you have venous insufficiency, do you know? |
| A: | That's what my doctor called it. |
| Q: | Is it painful? |
| A: | Yeah.  It's very painful.  It brings tears to my eyes. |
| Q: | Okay.  And do you have to sit in a special chair or anything?  Or do you have to recline? |
| A: | I have to stick a pillow underneath each leg, like the thigh area, and just relax. |
| Q: | Okay.  What other kinds of thing—is there anything else that you can do physically?  Or are you very limited? |
| A: | Basically limited.  I can, you know, dress my daughter if I'm sitting down. |
| Q: | But you can't do it standing up? |
| A: | No. |

*Id*. at 43-44.  Butters explained that she also suffers from depression and anxiety, which causes her to "cry a lot . . . [i]t makes me feel . . . worthless and not good enough."  *Id*. at 48.  In addition, Butters testified that she has problems sleeping at night and frequently must take naps during the day.  *Id*. at 49.  Butters's attorney also asked about the wide variety of medications that Butters has been prescribed by her doctors to control her heart rate, chest pains, leg pains, depression and anxiety.  *Id*. at 44-46.

### 2. Vocational expert's testimony

At the hearing, the ALJ provided vocational expert Maryanne Jacobs with a hypothetical involving an individual with Butters's vocational and medical background who "can lift [ten] pounds occasionally or frequently and she would be able to stand and walk only two hours total during the workday." *Id*. at 52. Jacobs testified that under such limitations, Butters could perform several jobs, such as (1) "information clerk in a private or public facility," (2) "calculating machine operator," and (3) "materials lister." *Id*. at 52-53.

In a second hypothetical, the ALJ asked Jacobs to consider the same scenario except the person would "require two or more unscheduled breaks per day and slow pace during the day." *Id*. at 53. Jacobs indicated that such a person would not be competitively employable. *Id*. at 54. In response to questions from Butters's attorney, Jacobs testified that an individual who is required to elevate his or her feet for at least one-third of the day would be precluded from jobs as an information clerk, calculating machine operator or materials lister. *Id*.

### C. Butters's Relevant Medical History

### 1. Congestive heart failure

On August 7, 2008, Butters visited Dr. David Kabel, M.D., a cardiologist at Cedar Valley Medical Specialists, P.C., for a six-month check-up. *Id*. at 278. Dr. Kabel indicated that "cardiac-wise [Butters] has been doing okay." *Id*. At that time, Butters's most recent ejection fraction was fifty percent.[2] *Id*. Butters also complained of chronic fatigue, which Dr. Kabel attributed to sleep apnea. *Id*. Butters was treated by her primary care physician, Dr. Matthew Kettman, M.D. for chest pains on December 18, 2008. *Id*.

---

[2] "Ejection fraction is a measurement of the percentage of blood leaving your heart each time it contracts. . . . An ejection fraction of fifty percent or lower is considered reduced." Martha Grogan, *Ejection Fraction: What Does it Measure*, Mayo Clinic (February 20, 2013), http://www.mayoclinic.com/health/ejection-fraction/AN00360.

at 363. A chest examination revealed that Butters's heart and lung functions were normal. *Id*.

On January 27, 2009, Dr. Kabel ordered an echocardiogram which indicated an ejection fraction of twenty-six percent. *Id*. at 280. Dr. Kabel noted that "given her severe left ventricular dysfunction, [Butters] is significantly disabled at this point." *Id*. at 281. "She would [be] incapable of even light lifting or being on her feet for any length of time. It would even be difficult to do a job that mostly required sitting." *Id*. Butters next visited Dr. Kabel on March 10, 2009, complaining of neck and shoulder pain. *Id*. at 283. Butters also visited Dr. Kabel on May 14, 2009. *Id*. at 284. At both appointments, Dr. Kabel noted that Butters's "lungs [were] clear" and that Butters exhibited normal cardiac function. *Id*. at 283-84. Dr. Kabel ultimately decided, in May 2009, to "back off [Butters's] medicine a little bit." *Id* at 284. On July 9, 2009, Butters visited Dr. Kabel at Dr. Kettman's request due to low blood pressure. *Id*. at 496. During this appointment, Dr. Kabel found that Butters's cardiac "symptoms are definitely worse than they were before." *Id*. at 497. On August 17, 2009, Dr. Mark Dyken, M.D., conducted a sleep study and concluded that Butters does not suffer from obstructive sleep apnea ("OSA"). *Id*. at 580. On September 1, 2009, Dr. Kabel again indicated that Butters "seems somewhat worse to me" and is "legitimately disabled." *Id*. at 515-16. Due to Butters's low blood pressure, Dr. Kabel noted that he "cannot treat her optimally with medications." *Id*. at 515. On September 23, 2009, Butters visited Dr. Kettman for a "well woman exam." *Id*. at 617. Butters reported that she was not experiencing chest pain, fatigue, shortness of breath, kidney stones, depression or anxiety. *Id*. at 618. Dr. Kettman did not find any problems during the physical examination, but noted a recent episode of pleuritic chest pain. *Id*. On September 29, 2009, Butters was admitted to Allen Memorial Hospital due to chest pains. *Id*. at 629. Dr. Kettman ordered an echocardiogram, which estimated Butters's ejection fraction between forty-five and fifty percent. *Id*. at 526. Dr. Kettman

noted that this was "significantly improved" from January 2009. *Id*. In another report from the same day, Allen Memorial Hospital's Dr. Roxana Leinbach, M.D., indicated that Butters's ejection fraction was within normal limits at sixty-five percent. *Id*. at 543.

On March 30, 2010, Dr. Kettman noted normal cardiac functions during a follow-up visit regarding an emergency room visit for abdominal pain on March 29, 2010. *Id*. at 723-24. On June 1, 2010, Butters visited Dr. Kabel for a three-month check-up. *Id*. at 733. Dr. Kabel noted that her physical examination was normal and decided to maintain the same treatment regimen. *Id*. Butters visited Dr. Kabel on September 7, 2010, for a three-month check-up. *Id*. at 703. Butters complained of fatigue and "occasional sharp stabbing chest pains," but her physical examination revealed no abnormalities. *Id*. On December 9, 2010, Dr. Kabel ordered another echocardiogram, which measured an ejection fraction of forty-one percent. *Id*. at 712.

### 2. *Kidney stones*

On August 18, 2009, Dr. Elizabeth Takacs, M.D., in the Urology Department at the University of Iowa Hospitals and Clinics examined Butters and diagnosed her with bilateral kidney stones. *Id*. at 583-84. On October 13, 2009, Butters visited Dr. Takacs for a follow-up appointment regarding the "small renal stones." *Id*. at 644. Dr. Takacs recommended a low-salt diet and increased fluid intake. *Id*. at 647. On March 25, 2010, Butters reported that she "continues to pass small stone fragments." *Id*. at 756. Butters also indicated that she had been "about [fifty percent] compliant with the prior recommendations." *Id*.

### 3. *Depression and anxiety*

Between 2008 and 2011, Butters regularly visited Dr. Douglas Jones, M.D., a psychiatrist at the Backbone Counseling Center and, later, the Abbe Center for Community Mental Health. *See, e.g., id*. at 391-92; 673-74. Dr. Jones diagnosed Butters with major depressive disorder and generalized anxiety disorder. *Id*. at 391. He regularly assessed

Butters's Global Assessment of Functioning level ("GAF")[3] between 60[4] and 65.[5] *Id*.; *see also id*. at 597. On January 5, 2009, Dr. Jones recommended psychotherapy, but Butters was not interested in this treatment. *Id*. at 344. On August 24, 2009, Dr. Jones noted that Butters's "mood has been stable," and recommended no change in her depression and anxiety medications. *Id*. at 602. On December 13, 2010, Dr. Jones indicated that Butters "is doing quite well." *Id*. at 676.

### 4.  *Physicians' opinions*

On August 24, 2009, Dr. Lawrence Staples, M.D., reviewed Butters's medical records and completed the Physical Residual Functional Capacity ("RFC") Assessment for Disability Determination Services ("DDS"). *Id*. at 499-506. Dr. Staples determined that Butters has the ability to frequently or occasionally lift up to ten pounds. *Id*. at 500. During an eight-hour workday, Butters can also stand or walk for at least two hours and sit with normal breaks for six hours. *Id*. Dr. Staples concluded that Butters requires no environmental limitations, other than avoiding concentrated exposure to hazards such as machinery or heights. *Id*. at 503. Dr. Staples determined that although Butters's

---

[3] *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) ("The [GAF] score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." (quoting *Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000)) (internal quotation marks omitted).

[4] A GAF level of 51-60 denotes: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (Michael B. First, M.D., ed., 4th ed. text revision 2000) ("DSM-IV-TR") (emphasis omitted).

[5] A GAF level of 61-70 denotes: "Some mild symptoms (e.g., depressed mood and mild insomnia) or some difficultly in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34 (emphasis omitted).

impairments are severe, "[s]he would be capable of performing work activities as indicated in the RFC." *Id*. at 506. Dr. Jan Hunter, D.O., affirmed Dr. Staples's findings on January 14, 2010. *Id*. at 666.

On August 5, 2009, Dr. Sandra David, Ph.D., who completed a Psychiatric Review Technique assessment for DDS, determined that Butters's mental impairments are not severe. *Id*. at 481-94. Dr. David's evaluation indicated that Butters's mental health conditions may place a mild restriction on her ability to perform daily activities and "maintain[] concentration, persistence, and pace." *Id*. at 491. Dr. David concluded that Butters's "mental issues at current times are nonsevere." *Id*. at 493.

Dr. Kabel completed a Cardiac Residual Functional Capacity assessment for DDS on June 3, 2011. *Id*. at 691-96. Dr. Kabel indicated that Butters can occasionally lift or carry items weighing up to ten pounds. *Id*. at 693. In an eight-hour workday, Butters could sit for up to two hours and stand or walk for less than one hour. *Id*. at 694. Butters should have her legs elevated at ten to fifteen degrees for sixty percent of a workday. *Id*. at 695. Dr. Kabel also recommended that Butters avoid all exposure to extreme temperatures, wetness, humidity, fumes or odors, and hazards. *Id*.

Dr. Kettman also completed a Cardiac Residual Functional Capacity assessment on June 8, 2011. *Id*. at 772-76. Dr. Kettman determined that Butters can occasionally lift or carry items weighing no more than five pounds. *Id*. at 774. During an eight-hour workday, Butters could sit for two hours and stand or walk for two hours. *Id*. at 773. Butters should have her legs elevated at ninety degrees for at least fifty percent of a workday. *Id*. at 775. Dr. Kettman recommended that Butters requires no restrictions on working in environments with extreme cold, wetness and noise. *Id*. Dr. Kettman also noted on the assessment, "Patient answers all questions in my presence." *Id*. at 776.

On June 8, 2009, at Butters's request, Dr. Kettman wrote a letter in support of her application for SSI benefits. *Id*. at 349. On June 11, 2009, Dr. Kabel also wrote a letter

indicating that "[g]iven her multiple medical problems, [Butters] should be considered eligible for complete disability." *Id*. at 351. On March 3, 2011, Dr. Kabel wrote another letter in support of her application, asserting that Butters "remains totally disabled because of heart disease and leg pains due to venous insufficiency." *Id*. at 691.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Butters is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. See 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)) (internal quotation marks omitted).

In order to establish a claim for SSI benefits, the impairment must result in a disability that "has lasted or can be expected to last for a continuous period of not less than twelve months." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(A)) (internal quotation marks omitted). "The claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Id*. If

the claimant meets this burden, the burden of proof then "shifts to the Commissioner at step five to show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must "demonstrate that the claimant retains the [RFC] to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including medical records, observations of treating physicians and others, and [the] [claimant's] own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523).

The ALJ applied the first step of the above analysis and determined that Butters had not engaged in substantial gainful activity since June 24, 2009. At the second step, the ALJ concluded from the medical evidence that Butters has the following severe impairments: cardiomyopathy, congestive heart failure, kidney stones and obesity. The ALJ found that Butters's alleged mental impairments are not severe because the record indicates "longstanding stability of depressive symptoms" and "infrequent panic or anxiety attacks." Record at 19. At the third step, the ALJ determined that Butters does not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ found that Butters has the RFC to "perform sedentary work . . . such that [she] could lift and carry [ten] pounds occasionally and frequently; stand and/or walk only [two] hours in an [eight]-hour workday; and only occasionally stoop, crouch, crawl, balance and climb ramps or stairs." *Id*. at 20-21. Also at the fourth step, the ALJ determined that Butters "is unable to perform any past relevant work." *Id*. At the fifth step, the ALJ concluded that based on Butters's age, education,

work experience and RFC, Butters could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ found that Butters was not disabled.

### B. Claimant's Objections

Butters argues that the ALJ erred in three respects. First, Butters argues that the ALJ failed to give appropriate weight to the opinions of Drs. Kabel and Kettman, her treating physicians. Second, Butters argues there is not substantial evidence in the record to support the ALJ's determination that Butters's condition does not meet an impairment listing. Finally, Butters argues that there is not substantial evidence to support the ALJ's determination of her RFC.

### 1. Drs. Kabel and Kettman's Opinions

Butters argues that the ALJ failed to properly evaluate the opinions of her treating physicians, Drs. Kabel and Kettman. Specifically, Butters argues that the ALJ "substitute[d] his own lay conclusions for those of treating or examining physicians." Brief in Support of Complaint at 6. In addition, Butters contends that "[t]he ALJ did not identify any evidence that was inconsistent with the treating sources." *Id*. at 8. Butters concludes that if the ALJ properly evaluated and weighed Drs. Kabel and Kettman's opinions, then the ALJ would have found that Butters is disabled.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). The opinions of treating physicians "will be granted controlling weight" where the opinions do not conflict with "other substantial evidence in the record." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)) (internal quotation marks omitted). However, "if the opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). "'It is the ALJ's function to resolve conflicts among the opinions of various

treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The regulations require the ALJ to give "good reasons" for according certain weight to medical opinions. *See* 20 C.F.R. § 404.1527(c)(2).

In his decision, the ALJ addressed the opinions of Drs. Kabel and Kettman as follows:

> [T]he opinions of Dr. Kabel and Dr. Kettman . . . consistently supported disability, an opinion reserved to the Commissioner; however, said opinions failed to acknowledge significant improvement in cardiac functioning during the relevant period. In addition, sources cited sleep apnea as well as significant peripheral edema as contributing to functional limitations; however, such diagnosis [sic] were not supported by the treatment record. Further, Dr. Kettman clearly reiterated the claimant's asserted limitations[,] which appeared to mirror those outlined in similar form and format per Dr. Kabel. In any case, physical examinations were largely unremarkable. As such, little weight has been accorded to the treating source opinions.

Record at 24. The ALJ pointed to ejection fraction measurements in the normal zone and multiple physical examinations that indicated that Butters was "healthy and in no acute distress." *Id*. at 22. Moreover, in considering non-treating physicians's opinions, the ALJ:

> accorded greater weight to the psychological and medical assessments of [s]tate agency [professionals] which consistently considered the objective diagnostic findings, the stability of symptom[s] and control under medical management, the effect of obesity as well as subjective complaints to the extent that the claimant would be capable of performing a limited range of sedentary work activities.

*Id*. at 24.

Having reviewed the entire record, the court finds that the ALJ properly evaluated and weighed the opinions of the treating physicians. Social Security Ruling 96-2p explains

that an ALJ must offer "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Here, the ALJ offered three reasons to support giving little weight to the treating physicians' opinions.

First, the ALJ pointed out that Drs. Kabel and Kettman ignored significant improvements in Butters's cardiac functioning by continuing to support her application for SSI benefits. The ALJ found that the physicians' opinions that Butters is disabled are inconsistent with Butters's improved ejection fraction measurements in September 2009 and December 2010. Moreover, Butters claims that the ALJ should have deferred to Drs. Kabel and Kettman's "medical expert opinions concerning Butters's inability to function or inability to work." Brief in Support of Complaint at 5. The court finds this contention misplaced because such opinions are not entitled to deference. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."); *see also Krogmeier v. Barnhardt*, 294 F.3d 1019, 1023 (8th Cir. 2002) ("[S]tatements that a claimant could not be gainfully employed are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (quoting *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996)) (internal quotation marks omitted)). Even though Butters continued to complain of heart-related symptoms, objective laboratory tests and examinations do not support the conclusion that Butters is disabled. Thus, the court finds that the ALJ's decision to give little weight to Drs. Kabel and Kettman's opinions because of apparent improvements in Butters's alleged impairments is a sufficiently specific "good reason" based on substantial evidence on the record as a whole.

Second, the ALJ asserted that Drs. Kabel and Kettman's diagnoses of sleep apnea and peripheral edema are inconsistent with the record. In support of this reason, the ALJ

pointed to a sleep test in August 2009 that concluded that Butters does not suffer from sleep apnea and to multiple physical examinations that found no edema. *Id*. at 21. The physicians' opinions that Butters was further limited by these conditions are not supported by substantial evidence in the record. "'An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011)). The court finds that the objective conclusions of testing and other examining physicians are more consistent with the record as a whole than Drs. Kabel and Kettman's assertions. Thus, the court concludes that the ALJ's decision to accord little weight to Drs. Kabel and Kettman's opinions with regard to undiagnosed conditions that allegedly contribute to Butters's limitations is a sufficiently specific "good reason" supported by substantial evidence on the record as a whole.

Third, the ALJ points out that the letters that the physicians provided in support of Butters's application were "outlined in similar form and format." *Id*. at 24. The ALJ suggested that Drs. Kabel and Kettman simply reiterated the limitations that Butters asserted. *Id*. As such, the ALJ found that their opinions deserve little weight because they were influenced by Butters's tendency to be "over-dramatic in her symptom presentation." *Id*. Again, the ALJ pointed out that Butters's "physical examinations were largely unremarkable," indicating normal cardiovascular functioning and stable overall health. *Id*. Although the court finds that Butters's alleged exaggeration of her symptoms may have misled her physicians, the ALJ's argument supports discrediting Butters, not necessarily her physicians. As such, the court finds this reason is insufficient to support discrediting Drs. Kabel and Kettman. However, the inconsistencies between the physicians' opinions and the medical evidence establish substantial evidence to support the ALJ's decision to accord little weight to Drs. Kabel and Kettman's opinions. Thus, even if this reason fails

to meet the requirement that the ALJ provide "good reasons," the court concludes that the ALJ's other reasons are sufficiently specific and supported by substantial evidence on the record as a whole to warrant giving little weight to Drs. Kabel and Kettman's opinions.

In summary, the court concludes that the ALJ provided "good reasons" for rejecting the opinions of Drs. Kabel and Kettman. *See Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion." (quoting 20 C.F.R. § 404.1527(d)(2))). The court further finds that the ALJ fulfilled his duty to fully and fairly develop the record with regard to the treating physicians' opinions. Accordingly, the court affirms the ALJ's conclusion that Butters's treating physicians' opinions should carry little weight because they are inconsistent with the evidence on record as a whole.

### 2. *Impairment Listing Determination*

Next, Butters argues that there is not substantial evidence in the record to support the ALJ's determination that she does not have an impairment that meets a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Butters argues that she "meets the first part of the listing for congestive heart failure," as well as "at least one of the part B criteria." Brief in Support of Complaint at 12. In addition, Butters contends that "the ALJ failed to provide . . . a discussion of how and why" he made this determination. *Id*. at 11. Butters concludes that if the ALJ properly considered the record as a whole, then the ALJ would have found that Butters meets the impairment listing.

"The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "'To meet a listing, an impairment must meet all of the listing's specified criteria.'" *Id*. (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Butters claims she meets a listing under Section 4.02. Brief in Support of Complaint at 12. The listing for chronic heart failure

requires a "[m]edically documented presence of . . . [an] ejection fraction of [thirty] percent or less during a period of stability" that results in one of the impairments listed in Subsection B.  20 C.F.R. Part. 404, subpt P, app. 1, § 4.02.  An impairment may be severe enough where "persistent symptoms of heart failure. . . very seriously limit the ability to independently initiate, sustain, or complete activities of daily living."  *Id*. at § 4.02, Part B(1).  Persistent symptoms are those that exist for "a continuous period of at least 12 months."  *Id*. at § 4.00(A)(3)(b).  Moreover, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."  *Boettcher*, 652 F.3d at 863.

Here, the ALJ indicated that he considered Listing 4.00 in full, in addition to Listings 1.00 (musculoskeletal system), 6.00 (genitourinary impairments) and 12.00 (neurological), to determine that Butters did not meet the impairment criteria.  *See* Record at 20.  Although the ALJ provided no additional explanation for his determination that Butters's impairment does not meet or equal the severity required by the listings, the court finds that the ALJ's conclusion is supported by substantial evidence on the record as a whole.  The medical evidence indicates that Butters suffered an ejection fraction of below thirty percent for, at most, nine consecutive months; therefore, the ALJ properly concluded that Butters did not suffer "persistent symptoms," as required by the listings.  Accordingly, the court affirms the ALJ's determination that Butters does not have an impairment that meets the requirements of the listing.

### 3.    *RFC Determination*

Finally, Butters argues that there is not substantial evidence to support the ALJ's determination of her RFC.  Specifically, Butters argues that by according the treating physicians' opinions little weight, the ALJ did not fully and fairly develop the record.  Brief in Support of Complaint at 14.  Butters contends that even if the treating physicians' opinions were given the appropriate weight, the ALJ did not have enough information to

make a decision on her RFC. *Id*. Butters concludes that if the ALJ properly considered the record as a whole, then he would not have determined that she is capable of performing sedentary work.

"A claimant's RFC represents the most he [or she] can do despite the combined effects of all of his [or her] credible limitations and must be based on all credible evidence." *McCoy,* 648 F.3d at 614. An ALJ has the responsibility of "assessing a claimant's [RFC] based on all relevant evidence." *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)) (internal quotation marks omitted). "When analyzing a claimant's subjective complaints of pain, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions." *Perks*, 687 F.3d at 1092-93. However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803. Thus, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968.

In this case, the ALJ determined that Butters has the RFC to perform sedentary work. In determining her RFC, the ALJ considered Butters's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Record at 21. The ALJ found that Butters's subjective complaints were inconsistent with the record as a whole. He pointed out that Butters "engaged in a variety of sedentary activities of daily living when motivated in her own interests to do so." *Id*. at 24. In addition, the ALJ found that Butters's alleged

20

impairments were not supported by objective medical evidence. Medical assessments conducted by non-treating physicians suggested that Butters "would be capable of performing a limited range of sedentary activities." *Id*; *see also id*. at 491, 506. The assessments of Butters's physical capabilities indicate that the non-treating physician accorded the opinions of treating cardiologist Dr. Kabel "considerable weight." *Id*. at 505. Yet, the non-treating physicians' assessments concluded that Butters "would be capable of performing work activities." *Id*. at 506; 666. Accordingly, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*. at 23. Likewise, the court finds that although Butters is unable to perform past relevant work, she is capable of performing sedentary work, as suggested by the vocational expert. The court concludes that given Butters's age, education and work experience, the ALJ's determination of Butters's RFC is supported by substantial evidence on the record as a whole.

## VI. CONCLUSION

The court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Drs. Kabel and Kettman. The ALJ also properly determined that Butters's alleged impairments do not meet or equal the listing requirements. Lastly, the ALJ's determination of Butters's RFC is substantially supported by the record as a whole. Accordingly, the court finds that the ALJ's decision the Butters is not disabled is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED**;

(2) Plaintiff's Complaint (docket no. 3) is **DISMISSED** with prejudice; and

(3)  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED** this 19th day of August, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA